## OVERTON v. CROCKETT.

See this case as to what will amount to an uninterrupted claim by a colonist to a particular section, half section or quarter section of land, entitling the colonist to a preference.

*Quere?* Whether a married man who emigrated to Peters' colony, leaving his family behind him on account of sickness, but bringing with him two sons over seventeen years of age and a slave, can claim the *whole* of a section of land on which he settled against one who afterwards settled on the same section prior to the arrival of the family of the first settler.

Where a colonist in Peters' colony claimed the half only of a section of land on which he was settled, and another colonist afterwards settled on and claimed the other half of the same section, the first settler, finding himself entitled to a whole section, cannot claim the *whole* of the section on which he settled, as against the subsequent settler.

The Act of 1850 provided that where colonists of Peters' colony were by mutual consent settled on the same section, &c., a division was to be made between them according to agreement. This is not restricted to cases where there has been a formal, written or verbal agreement, executed cotemporaneously with the settlements of the respective parties, but covers cases where settlers on the section, &c., claimed portions thereof, with the concurrence, actual or implied, of other settlers on the same section, half section, &c.

Where a colonist in Peters' colony obtained a certificate under the provisions of the Act of 1850, and applied it to a particular section or half section, by survey, he had such title to the land as precludes him from saying that the statute of limitations would not run in favor of an adverse claimant, before the Act of 1853, which first provided expressly that an action of trespass to try title might be maintained upon such certificate and survey.

Appeal from Dallas. This suit was commenced by appellant against appellee, for the recovery of section twenty, township one, south of the first base line in range one east of the first meridian, as surveyed by the Peters' Colony Company, to which appellant alleges himself entitled by virtue of the ordinance adopted by the Convention on the 27th of August, A. D. 1845, and also the Act of the Legislature passed 21st of January, 1850, to secure to settlers within Peters' colony the land to which they were entitled, he, as he alleges in his petition having settled upon said section of land as a head of a family and colonist in said colony on the first day of De-

cember, 1844, and continued in possession of the same until the commencement of his suit, and that he was the oldest settler upon said section of land. Appellee sets up a title to the east half of said section of land, under a purchase from one George S. C. Lenard, to whom, he contends, the same belonged, as a colonist in said Peters' colony, and also that he and his said vendor had held adverse possession of said east half of said section of land (as to which alone there was any controversy) for more than three years, under color of title, before the commencement of appellant's suit. To the answer setting up the statute of limitations, the appellant filed a general exception, which was overruled by the Court.

The testimony shows that the appellant came to the colony from the State of Missouri in the fall of 1844, bringing with him his son and nephew who resided with him, but were at the time over seventeen years of age and obtained land as colonists in said colony, a negro, a part of his property. At the time, he owned a large amount of land in Missouri, which he authorized his agent to sell during his absence, which in part he did ; that both in the spring of 1845 and 1846 appellant left the colony for Missouri, taking with him wagons and teams for the purpose of bringing the remainder of his family to the colony, but was by their sickness prevented from doing so on each occasion, but in the fall of each year he returned, bringing back with him an additional portion of his household and kitchen furniture and farming utensils, and that in the fall of 1847 he brought his wife and daughters to the country ; appellant settled on said section twenty in December, 1844, though the surveys had not then been made, and commenced to improve upon it the next year, and has continued to reside upon and improve it ever since, but he has been only in the accupation of the west half of said section, and in 1850 appellant established his right to six hundred and forty acres of land as a colonist in said colony before Commissioner Thos. Wm. Ward, and made oath that he emigrated to said colony as a head of a family in the year 1847. The vendor of the

appellee came to the colony a single man over seventeen years old in 1843, and settled upon and improved what according to the surveys as then recognized by the colonists, corresponded with the east half of said section twenty, and made a crop on it in 1844, but cribed the same at his father's (whose land joined his) and the next winter went on business to the State of Tennessee, where he remained until the spring of 1846, leaving his father his agent and his improvement in his care. In the spring of 1845 said surveys were corrected, and the lines as now recognized were run and established by said company, with the consent of the colonists, including the plaintiff. By said re-survey, the south line of section twenty was run about 250 or 300 yards north of what was the former line, and the improvements made by appellee's vendor were south of said line and on section twenty-nine of the re-surveys, which was claimed by his father, and when he returned home in the spring of 1846, he sold his said cabin to his father, who built him another for it upon the east half of said section twenty as then run, and during said spring he moved to the same and he and the appellee have continued to reside upon said east half of said section twenty from that time, except a temporary absence from sickness and while hired to make rails in the neighborhood, until the commencement of this suit. Said Lenard, appellee's vendor, obtained from Hedgecox, agent of said company a certificate for said half section in 1847, and also in the spring of 1850 established before Commissioner Thos. Wm. Ward, his right to three hundred and twenty acres of land as a colonist in said colony, and by virtue of the colony certificate issued to him by said Ward procured said east half of said section twenty to be surveyed for him by the Deputy Surveyor of the land district in which the land is situated on the 10th of April, 1850, having the field notes of said survey duly returned, recorded, &c. The testimony also shows that the appellant had the west half of said section twenty surveyed under his colony certificate issued to him by said Commissioner Thos. Wm. Ward, on the 20th of August,

1850, by having the same applied to the field notes of said land that had been made for him in January, 1848, and also that appellant frequently and repeatedly recognized said Lenard's claim and right to said east half of said section twenty, and never himself set up any claim to the same until sometime during the year 1850.

The Court charged the jury, that three years uninterrupted adverse possession by defendant and his vendor, under a survey on a genuine land certificate would entitle the defendant to a verdict in his favor.

That in order to claim as the head of a family, the plaintiff was required to show that his family was actually domiciliated in the country ; and the residence of the plaintiff, with his two sons over seventeen years of age and a slave, the balance of his family being detained in Missouri by sickness, was not sufficient.

That the defendant occupied the same position before them, that his vendor would have occupied if he had remained in possession of the land up to this time, and had been sued by the plaintiff. And

That if the plaintiff was only claiming the west half of the section, at the time when the vendor of the defendant settled on the east half, he could not recover.

*N. M. Burford*, for appellant. The Court erred in charging that three years adverse possession in defendant and his vendor, under a survey on a genuine certificate, would authorize the jury to find for defendant. This was clearly erroneous, in not charging that the three years possession must be under color of title duly recorded. (Art. 2391 and Hart. Dig. ; 10th Tex. R. 391.) And if defendant had been in possession adversely for three years before the bringing of this suit, yet the statute of limitations would not apply, unless the three years adverse holding had elapsed after the accrual of plaintiff's cause of action ; and it is contended that appel-

lant's cause of action did not accrue until after the passage of the law of the 10th February, 1853, as it was by authority of that law, that plaintiff was authorized to institute this suit. Previous to the passage of said law of the 10th February, 1853, plaintiff could not maintain an action of trespass to try title, on his claim to the land in controversy. Before that time any one could with impunity hold possession of the land. But the law of the 10th February, 1853, made it lawful to bring suits upon the surveys as made by the Peters' Company. Immediately upon the passage of this law appellant instituted this suit.

If I am correct in saying that plaintiff's cause of action did not accrue until the passage of the law of the 10th February, 1853, it follows of course, that not until then did the statute of limitations begin to run against appellant's cause of action. (10 Tex. R. 390.)

II. The Court erred in charging the jury, that in order to make appellant the oldest settler on the land, as the head of a family, his family should have been actually domiciliated in the country at the date of his settlement. This charge is in direct conflict with the former decisions of this Court. (Young v. The Republic, Dallam, 464 ; Skidmore's case, 5 Tex. R. 469 ; Russell's heirs v. Randolph, decided at Galveston in January, 1854.) From these authorities it appears beyond cavil, that at the time appellant made his settlement on the land in 1844, his family, though in the State of Missouri, were constructively with him in Texas, and that his settlement on the land in 1844, was a settlement made by the head of a family, (Story on conflict of laws, Sec. 44, 45, 46 and 47,) and the facts of this case, showing so conclusively that appellant made the first settlement on the land, prove that the jury were misled (in finding their verdict,) by this erroneous charge of the Court.

III. The Court charged the jury that defendant Crockett occupied the same position before them, that his vendor (Lenard) would occupy were he and not Crockett defending this suit.

33

I contend that any facts that might go to show that Lenard' was an older settler than appellant, could not avail the appellee anything on the trial of this cause. The law relating to lands in Peters' colony (Hart. Dig. p. 682,) provided that when two persons had settled on the same section of land, the same should belong to the oldest settler. This act of the Legislature conferred a personal privilege on the colony settler who had first settled any tract of land, which privilege being personal, and enuring to the person of the settler, was not a subject of alienation by deed of conveyance.

Here an important question arises, which I think must be decisive of this case. I contend that all the right appellee has to the land in controversy is such right as he acquired by purchase from Lenard, and that no right of occupancy enjoyed by Lenard previous to his sale can be attached to the subsequent possession of appellee, and that the Court erred in permitting any evidence to go to the jury, as to when Lenard settled on the land.

IV. The verdict of the jury cannot be sustained by the admissions of appellant. The Supreme Court of Kentucky say, " the admissions of an adversary's right to land, when that " right was as much a question of law as of fact, will not pre- "judice the rights of the party making the admissions. (5 Littell, R. 22.)

*G. F. Moore*, for appellee. I. Even if it should be conceded that Lenard resided in his father's family, the erection of his cabin and cultivation of the land would be such an apparent and open settlement and occupation of the land as to have entitled him to the same as a colonist. (U. S. Dig. 2 vol. Sup. p. 278, Sec. 23, reference to Wallace v. Scott, 7 Watts & Serg. 248; 1 U. S. Anl. Dig. p. 332, Sec. 1 & 2, Wilson v. Watterson, 4 Barr, 214.)

Lenard's settlement upon said half section fixed his rights as a settler upon the same co-extensive with the boundaries of said half section, and not merely to the spot where his cabin

chanced to be placed; and if the surveys were afterwards corrected by proper authority, his land would be that embraced in the corrected survey of the land which he had appropriated.

Nor did the temporary absence of said Lenard work a forfeiture of his rights. If the appellant can invoke the general doctrine of the Common Law upon the subject of domicil, to clothe himself with the privileges of a settler in said colony as the head of a family, when in fact his family was still beyond the limits of the State, with equal truth and justice could Lenard show that in the eye of the law he was still domiciliated on said land, though temporarily absent from the country. "To constitute an abandonment of land by a settler, there " must be an actual relinquishment of possession without in- " tention of returning." (1 U. S. Dig. Sup. p. 1, Sec. 15; " Miller v. Cresson, 5 Watts & Serg. 284.)

II. If we are correct in these positions, the land in controversy was appropriated by Lenard's settlement for nearly twelve months before appellant came to the colony; but if not, and he is only to be regarded as a settler upon the land from the spring of 1846, let us consider what would still be the respective rights of the parties.

Then, it is admitted, that if the appellant at the time of his settlement or at any time previous to Lenard's settlement, was entitled to the privileges of a head of a family, unless Lenard settled upon said land with his consent, the law of 1850, (Hart. Dig. p. 682,) gave the entire section to the appellant. Should the appellant be regarded as a settler in the colony as a head of a family previous to the removal of his wife and daughters from Missouri? It is conceded that as a general rule, the domicil of the wife follows that of her husband, "yet this rule is not without its exceptions;" (Hare v. Hare, 10 Tex. R. 355;) and that the construction of the laws of colonization granting bounties to heads of families, unless under peculiar circumstances furnishes the exception, is shown by the cases of the Republic and State v. Skidmore; and the facts do not bring the appellant within the rule of the Republic v. Young, Dall. 464.

If, however, the testimony adduced by the appellant is regarded as sufficient to raise a presumption of a change of domicil, this is fully and conclusively rebutted by the appellant's own affidavit made before the Commissioner appointed under the Act of 1850, where he swears that he emigrated and entered the colony as a colonist in the year 1847. That, "in "questions of domicil evidence of a party's conduct afterwards "as well as before may be received to ascertain his intention "on a particular day," see Richmond v. Vasselboroug, 5 Greenl. 396, U. S. Dig. 2 vol. p. 103, Sec. 18.

But it is submitted, whatever may have been the rights of the appellant, if governed by the general doctrine upon the subject of domicil, the government most wisely stipulated in the contract itself who should be regarded as heads of families, and if its provisions are to control us, then it is most evident that the appellant cannot claim to have been a settler in said colony as a head of a family prior to the fall of 1847, when he brought his wife and daughters to the colony.

III. But, supposing appellant to have been the oldest settler and the head of a family, would he be entitled by the 3rd and 4th Sections of the law of 1850, (Dig. Art. 2231 & 2,) under the facts of the case, to the entire section? I cannot suppose that the Legislature intended to take any vested right or interest from one colonist to confer it on another. But, as under the colony contracts, whenever a colonist made his settlement, he fixed the right of himself and the company to the entire section, half section or fraction of a section, as was intended by the settlement, and any other colonist was not subsequently authorized to settle on the same and by doing so acquired no right in the land settled upon, but was an intruder upon the prior settler and the company, and when that part of the land which by the contracts the company would have received was granted to the colonist, it was but justice that he should have the entire tract to which he had fixed the right of himself and the company to the exclusion of any claim that might be set up by the subsequent intruder. But where, as

here, neither the prior settler or the company claimed that the east half of the section was fixed in the company or appellant by his settlement, this would be a consent to any colonist who might wish to do so, to settle upon it.

But the testimony is amply sufficient to prove (if it were necessary) that the appellant had expressly consented to Lenard's settlement upon the land. This is not only shown by the numerous and repeated acts and declarations of the appellant, from the time of his first settlement in the colony until after the passage of the law of 1850, but, even after he obtained his certificate under this law from Commissioner Ward, he only applied the same to the west half of the section as late as the 20th of August, 1850, and there is no pretence that the appellant ever set up any claim to the east half of the section until after the passage of the Act of 1850. There being, then, no conflict in the testimony upon this point, even if there was error in the ruling of the Court on the subject of domicil, the judgment of the District Court upon the whole being correct, should be sustained. (Herndon v. Casiano, 7 Tex. 337; Lovering v. McKinney & Williams, Id. 525; Wafford v. Thompson, 8 Id. 225; Campbell v. Sparks, 6 Id. 379.)

IV. Was the appellee entitled to a verdict under his plea of the statute of limitations? The testimony shows that the appellee and his vendor had held the land in continued adverse possession from the Spring of 1847 at least, until the present time; that said land was surveyed for said Lenard on the 1st day of April, 1850, under his colony certificate granted by Commissioner Ward, by the Deputy Surveyor of the land district, and that the field notes of the survey had been duly returned and recorded, and that the same had been duly transferred to the appellee, and the suit not having been commenced until the 22nd of August, 1853, the appellee would be entitled to a verdict under this plea, (see Horton v. Crawford, 10 Tex. 382,) unless, as is urged by the appellant, he could not maintain an action for the land until after the passage of the Act of February, 1853. To this we might answer

that the exception to appellee's answer being general, he could not be heard in this Court to urge this exception; but it seems most singular how the appellant could contend, as he does in his petition, that both the ordinance in the convention and the Act of January 21st, 1850, were legislative grants to him for the land in controversy, and yet he could not maintain an action against a trespasser upon the land thus granted to him. That a grant of land by an Act of the Legislature is of equal dignity with a patent and vests an actual seizin, cannot be questioned, (Strother v. Lucas, 12 Pet. 454; Enfield v. Permit, 8 New Hamp. 512, 2 Sup. U. S. Dig. p. 87, Sec. 7,) and a title confirmed by an Act of the Legislature would be sufficient to maintain ejectment. (Chouteau v. Eckhart, 2 How. U. S. R. 372 & 3.)

But even if the appellant could not have maintained an action of trespass in its technical sense, as "there is no right without a remedy," if the law gave the land in controversy to the appellant, he certainly also must have had a right of action of some character to have secured himself in what the law granted, and as the appellee's and his vendor's possession of the land for more than three years under color of title adversely to appellant's right would bar any action founded on such right, (Horton v. Crawford, 10 Tex. R. 382; Dig. Art. 2391,) the bar could not be lengthened merely by the Legislature's giving a different and independent remedy for enforcing the original right.

*T. J. Jennings*, also, for appellee.

HEMPHILL, CH. J. The controversy in this case has been waged with extraordinary zeal, vigor and pertinacity. Exceptions to pleading, to evidence, to the charges and rulings of the Court, grounds for new trial, and in error, are accumulated in masses in the record; and extended though lucid and masterly arguments in support of the respective litigants, have been presented for the consideration of this Court.

It would be not less tedious than unprofitable to discuss in detail the nineteen grounds of error assigned by appellant, and the three or four set up by the appellee. For the facts establish so conclusively the superior merits of the claim of the appellee, that whatever the errors (if any there be) in the progress of the cause, yet the judgment being right on the merits cannot be disturbed. I shall not attempt to recapitulate the voluminous evidence in the case. A reference to the statement by the Reporter will make intelligible the positions assumed in the opinion. The suit involves the eastern half of a section of land in Peters' colony, and it appears from the evidence, (to portions of which there were general indefinite exceptions which we believe to have been properly overruled,) that G. S. C. Lenard, the vendor of the appellee, being over seventeen years of age at the date of his emigration to the country, settled on this half section in 1843 or 1844, prior in time to the settlement of the west half of the section by the plaintiff in the year 1844. True, the surveys of the sections as then recognized by the colonists, were subsequently corrected, (with the general assent of the colonists, the plaintiff included,) by retracing the lines of the southern and northern boundaries, but not the eastern and western, of the sections, and by which the former were removed from two hundred and fifty to three hundred yards from the lines as originally traced, and in consequence of such change, the house, but not the whole of the improvement was left out of the half section claimed by Lenard, and fell not into the west half on which the plaintiff had settled, but into a different section. But this modification did not affect the rights of Lenard. He still claimed the east half of section twenty notwithstanding its partial change of boundary, had another cabin built upon it, a portion of his original improvement was included within its limits, and on his return from a temporary absence in Tennessee, lived on the land until compelled by sickness to retreat to the house of his father who lived adjoining, and after the expiration of a temporary employment for hire in the neighborhood, he repaired, again, in the spring of

1847, to the tract in controversy on which he and the appellee
have ever since resided.   He performed all acts, and complied
with all legal formalities to secure his rights to the land.   He
obtained a certificate from the agent of the colony in 1847, and
from the Commissioner appointed under the Act of 1850, pro-
cured another certificate which was by survey appropriated to
this land.   His claim to the land, continued down through the
appellee, existed for ten years uninterrupted until the com-
mencement of this suit; his two absences not being such as
on any reasonable or liberal principles of construction should,
under the circumstances, deprive him of his right.

Let us now examine what were the acts of the appellant,
relative to this land, during the long period of adverse claim,
and possession by the vendor of the appellee.

The appellant removed to the country in 1844, leaving his
wife and daughters at his former home in Missouri, and settled
on the western half of the section, the eastern half of which
was then claimed by Lenard, now by the appellee.   Whether
the plaintiff can be regarded as the head of a family at the
date of his emigration, or can set up any pretensions to land
as such at that date, is, to say the least, extremely doubtful.
The law, as understood and recognized in the colony, was ad-
verse to such claim; and such was the opinion of the plaintiff
himself, who did not claim as the head of a family until 1847,
and until after the removal of his wife to the country.   And
in 1850, before the Commissioner Thomas Wm. Ward, he
solemnly swore that he, a married man, had emigrated to
Texas and entered Peters' colony as a colonist with his family
in the year 1847.   Whether his oath should preclude him from
pretensions to lands on the ground of occupancy antecedent
to 1847, is not, under the facts of this case, very material.
For, admitting (as was the fact) that he was settled in the
country as a colonist prior to 1847, yet this will avail him
nothing, as will be seen, against the claim of the appellee.
For, although the appellant did in 1844 settle on the western
half of section twenty, yet this was consistent with and not in

derogation of the rights of appellee. There was a recognized divisional line between the eastern and western halves of the sections, and the latter half and that only was occupied by appellant or claimed by him before some time in the year eighteen hundred and fifty. He did not until that year advance a shadow of pretension to the eastern half which was occupied and claimed by the vendor of the appellee. By acts, by words, by acknowledgments, by virtual disclaimers often repeated, the plaintiff acquiesced in and recognized the claim of Lenard to the eastern half, not pretending, for many years, to set up one for himself. There may be doubt from the evidence, whether, under the stipulations of the contract, he could, at the date of his emigration, even admitting him to be the head of a family, have claimed more than a half section, but whether he could or not, one thing is certain, he did not claim the eastern half of section twenty, but when he made pretensions to more than a half section, he claimed in addition to the west half of section twenty, the half of a section still further west.

His claim to land was, in three several instances, surveyed at his own request, once before and once in 1848, and a third time in 1850, each survey including only the western half of section twenty, and the last survey made on a certificate under the law of 1850, though it is under his construction of this law, that the plaintiff has attempted to increase his pretensions so as to embrace the whole of the section instead of the west half, which only he had previously claimed.

If one can, by express and virtual disclaimers of right to property, be precluded from subsequent assertion of such right, to the injury of others, it is quite manifest that the plaintiff is estopped from claiming the land in controversy.

It is urged for the plaintiff, that under the ordinance of 1845, (p. 85, Hartley,) he is entitled to the whole of the section; that by this ordinance, heads of families who were actual settlers, were entitled to six hundred and forty acres, and that at the adoption of the ordinance, the said Lenard was in Tennessee, absent from this State, and in fact was not an actual

settler, and consequently his claim can operate no bar to the plaintiff.

There are some insurmountable objections to this pretension on the part of the appellant. In the first place, if we give credence to the plaintiff's oath, he was not in the country in 1845; but, admitting that he was individually present, yet he did not then claim as head of a family, and could not claim in that capacity according to the received law in Peters' colony, and whether he could or could not claim in that capacity, yet he did not claim the land which is the subject of this suit. Furthermore, the ordinance does not grant six hundred and forty acres, in so many terms, to the head of a family. Under the stipulation of the contract, he might not have been entitled to so much. The ordinance only declared this right to the amount to which he was entitled, provided it did not exceed six hundred and forty acres. This is the only effect of the ordinance. It grants land, but without specification of exact quantity, or without giving special preference of location, either on the ground of occupancy or otherwise. Such would be the condition of the plaintiff's claim, if the ordinance alone was considered, even admitting, for the sake of the argument, that by absence Lenard had forfeited his right, and that the acts of the plaintiff, in acknowledgment of the rights of Lenard, should pass for nothing. The plaintiff at best would have a right only to an indefinite quantity of land, not to exceed a certain amount, but he would have no more special right to claim the land in question, than any other land in the colony.

But the main stratum on which rests the claim of the plaintiff, is the Act of the 21st January, 1850. The Sections which have a bearing on the rights in this controversy are the third, fourth and sixth, (Art. 2231-32-34,) and their substance is, that where two or more colonists have settled on one and the same section, half section or fraction of a section, the oldest settler shall be entitled to the preference, and the party dispossessed shall be entitled to the proper quantity to be located

elsewhere within the colony limits; and that where two or more colonists shall have settled on the same section, half section or fraction of a section, by mutual consent, the same shall be divided according to agreement, and each colonist so settled shall be entitled to his unsatisfied residue out of other vacant lands within the limits of the colony, and each settler shall be confined to the section, half section or fraction of a section, as theretofore surveyed, but if the field notes cannot be obtained, then the County Surveyor is required to survey the section, half section, or quarter section for such settler.

The effect of these provisions, it would seem, is to give to the oldest settler the section, half section or quarter section on which he settled, in preference to one whose settlement on the same section, half section or quarter section was of a posterior date; but not to bestow the whole of a section on one who had settled only on a half section, laying no claim to the other half, and which in fact was occupied and claimed adversely, and whose previous survey did not embrace the whole, but only the half section which he had claimed and settled. But, were it even admitted that the plaintiff was the oldest settler on this section, (which, however, is not the case in proof,) and were it also conceded that the plaintiff, by priority of settlement, is entitled to the whole of the section, though he claimed but half, yet these concessions would be unavailing to the plaintiff. For, by statute, when colonists were by mutual consent settled on the same section, &c., a division was to be made between them according to agreement. This is not restricted to cases where there has been a formal written or verbal agreement, executed cotemporaneously with the settlements of the respective parties, but covers cases where settlers on the section, &c., claimed portions thereof with the concurrence, actual or implied, of other settlers on the same section, half section, &c. In this case, there was an established dividing line between the plaintiff and Lenard. The proofs of plaintiff's assent to Lenard's settlement are multiplied, and they are as conclusive against him as if an indenture of agreement had existed between the parties.

At the close of the able and full charge pronounced by the Court; the jury were instructed that if they found that the defendant and his vendor Lenard had been in the peaceable and uninterrupted adverse possession of the land in controversy for the term of three years next before the institution of this suit, under a survey made by a genuine land certificate, then they should find for the defendant. This has been assigned as error, but it is believed on insufficient grounds. In terms it conforms to the requisitions of the 15th Section of the statute of limitations. It enumerates the elements necessary to constitute the bar of the statute, and if applicable to the facts it was an exposition of the law of the case by which the jury should have been controlled. The facts in relation to the title of the vendor of appellee, were that by virtue of the Act of 1850 he had received a legislative grant for the amount of land to which he was entitled, and when this was fixed by actual survey in virtue of a certificate issuing under the Act, he had then such title to the specific tract surveyed, as would, if held adversely for three years, raise a bar against all suits instituted for the recovery of the said land. This half section was surveyed for Lenard more than three years before the commencement of this suit, and the continued adverse possession under such survey operated as a bar to the recovery by the plaintiff.

Judgment affirmed.